**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DANIEL DOE, GREGORY GOE, CHARLOTTE COE, PATRICK POE, and RILEY ROE,[1] on behalf of themselves and all persons similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> SCOTT KUPOR, in his official capacity as Director of the UNITED STATES OFFICE OF PERSONNEL MANAGEMENT 1900 E Street N.W. Washington, D.C. 20530 <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br> Case No.: |

**CLASS ACTION COMPLAINT**

*(Employment Discrimination Based on Sex*
*in Violation of Title VII of the Civil Rights Act of 1964)*

1.      Plaintiffs Daniel Doe, Gregory Goe, Charlotte Coe, Patrick Poe, and Riley Roe

(Plaintiffs) bring this putative class action on behalf of themselves and all similarly situated

individuals against Defendant Scott Kupor in his official capacity as Director of the U.S. Office of

Personnel Management (Defendant, OPM, or Agency), for discriminating against federal

employees on the basis of sex, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.

§ 2000e et seq. (Title VII).

---

[1] Pursuant to Local Civil Rule 5.1(c)(1), the residential addresses of Plaintiffs are being filed under seal with the Court in a concurrent Notice of Filing. Plaintiffs are seeking to proceed under pseudonyms pursuant to their concurrently filed Motion for Leave to Proceed Under Pseudonyms and For Protective Order. References to Plaintiffs herein will be by their pseudonyms.

2.      On January 20, 2025, President Donald J. Trump signed Executive Order 14168, "Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government" (EO 14168). At the administration's direction and pursuant to EO 14168, OPM issued FEHB Program Carrier Letter Number 2025-01b, effective January 1, 2026, which prohibits insurance coverage for gender-affirming care under the Federal Employee Health Benefits Program (FEHB) and the Postal Service Health Benefits Program (PSHB). Carrier Letter 2025-01b states:

> For Plan Year 2026, chemical and surgical modification of an individual's sex traits through medical interventions (to include "gender transition" services) will no longer be covered under the FEHB or PSHB Programs. This exclusion expands upon Carrier Letter 2025-01a and applies regardless of age.

3.      The federal government provides its employees and retirees with health insurance benefits through FEHB or PSHB as a term, condition, and privilege of their employment.[2]

4.      By prohibiting coverage for gender-affirming care, OPM has discriminated, and continues to discriminate, against Plaintiffs and the class they represent on the basis of sex, in violation of Title VII.

5.      Carrier Letter 2025-01b applies to all beneficiaries, meaning it strips coverage not only from transgender or gender non-conforming federal employees and retirees seeking care for themselves, but also from their transgender or gender non-conforming spouses and children enrolled as dependents under their FEHB or PSHB plans.

---

[2] OPM contracts with private health insurance carriers to offer insurance benefits for federal government employees, retirees, and their dependents. Each Plan Year, OPM issues a list of health insurance carriers from which enrollees can select their insurance plan, including Blue Cross Blue Shield, the National Association of Letter Carriers Health Benefit Plan, Mail Handlers Benefit Program, United Healthcare, and the Foreign Service Benefit Plan.

Carrier Letters issued by OPM govern whether and how FEHB and PSHB carriers cover healthcare costs or services for federal government enrollees.

6.      Carrier Letter 2025-01b also states that, for Plan Year 2026 only, carriers may establish an exception process to cover otherwise excluded services for beneficiaries who are "mid-treatment within a surgical and/or hormonal regimen for diagnosed gender dysphoria." The Carrier Letter does not define "mid-treatment," identify the criteria carriers must or should use to determine whether a beneficiary qualifies for an exception, specify how beneficiaries may seek review of an adverse determination, or address whether beneficiaries who chose or were forced to change FEHB or PSHB plans for Plan Year 2026 are eligible for the exception. This exceptions process itself constitutes additional discrimination on the basis of sex: It requires beneficiaries seeking gender-affirming care to go through a separate process that OPM does not require for other medically necessary care; imposes heightened uncertainty for transgender and gender non-conforming beneficiaries as to what, if any, of their gender-affirming medical care will be covered; and it categorically forecloses coverage for those who have not yet commenced a hormonal or surgical course of treatment.

7.      On March 31, 2026, OPM issued FEHB Carrier Letter 2026-07, which mandated that all FEHB and PSHB providers remove the exceptions process beginning in Plan Year 2027. Specifically, OPM directed:

> Beginning in the 2027 Plan Year, Carriers must remove any exceptions process (as previously identified in Carrier Letter 2025-01b) for coverage of excluded services for members who are mid-treatment within a surgical and/or hormonal regimen for diagnosed gender dysphoria.

This categorical denial of treatment for those who require continuing gender-affirming care is akin to denying continuing insulin treatment for someone with diabetes.

8.      Plaintiffs are transgender or gender non-conforming federal employees and a federal employee with a dependent who is transgender, all of whom are enrolled in FEHB or PSHB plans and all of whom have been denied, or will be imminently denied, coverage for gender-

affirming care as a direct result of Carrier Letter 2025-01b and Carrier Letter 2026-07 (together hereinafter referred to as the Carrier Letters). They bring this action on behalf of themselves and two putative classes of federal employees and retirees enrolled in FEHB or PSHB plans who have been or will be denied coverage for gender-affirming care for themselves or their dependents pursuant to OPM's exclusionary policies.

9.    Through this action, Plaintiffs seek a declaratory judgment that the Carrier Letters and any other policies prohibiting health insurance coverage for certain gender-affirming care for current and former federal employees, spouses, and dependents, violate Title VII; a permanent injunction enjoining Defendant from enforcing the Carrier Letters or any other policy that prohibits coverage for gender-affirming care under FEHB or PSHB plans; compensatory damages; and all other equitable and legal relief the Court deems just and proper.

## **PARTIES**

10.    Plaintiff Daniel Doe is a transgender non-binary individual. Dr. Doe is employed within the United States Department of Health and Human Services. Dr. Doe has been enrolled in the FEHB Program since 2024. Dr. Doe previously received FEHB benefits through the National Association of Letter Carriers Health Benefit Plan (NALC), which ceased to be an FEHB carrier in Plan Year 2026, forcing him to change carriers. In Plan Year 2026, he receives benefits through the Mail Handlers Benefit Program (MHBP). Dr. Doe has been receiving Hormone Replacement Therapy (HRT) as gender-affirming care since 2019; prior to January 2026, that care was covered under his FEHB plan. His treating providers have also determined that gender-affirming surgery is needed to further treat his gender dysphoria. As of January 1, 2026, neither his HRT nor his planned surgery is covered under his FEHB plan. Without coverage, he faces costs of approximately $1,000 per year for HRT and approximately $6,000 for gender-affirming surgery.

11.    Plaintiff Gregory Goe is a transgender man. He is an employee at the United States Department of State. Mr. Goe has been enrolled in the FEHB Program since 2024, and in Plan Year 2026 receives FEHB benefits through Blue Cross Blue Shield. He has been receiving HRT at the direction of his healthcare providers since 2018; prior to January 2026, that care was covered under his FEHB plan. His treating providers have determined that gender-affirming surgery is medically necessary to further treat his gender dysphoria. As of January 1, 2026, the surgery is no longer covered under his FEHB plan. His current surgeon will not schedule him for surgery due to the lack of insurance coverage. Without coverage, Mr. Goe faces over $100,000 in out-of-pocket costs for his treatment. He is unable to afford all the costs necessary to meet his medical needs.

12.    Plaintiff Charlotte Coe is a transgender woman. She is an employee of the Department of State. She is an enrollee in the FEHB Program, and for Plan Year 2026 receives FEHB coverage through Blue Cross Blue Shield. She has been receiving HRT and requires ongoing mandatory postoperative care for a procedure treating her diagnosed gender dysphoria. Starting in or around March 2026, she received bills from her healthcare provider that indicated that her annual exam, bloodwork, surgical follow-up appointments, and HRT were no longer covered by her FEHB insurance. She has paid hundreds of dollars in out-of-pocket costs already for gender-affirming treatment that is no longer covered by FEHB insurance and faces thousands of dollars more in out-of-pocket costs for her treatment.

13.    Plaintiff Patrick Poe is an employee at the United States Postal Service, where he has worked for about 7.5 years. Mr. Poe has been enrolled in the PSHB since 2018, and in Plan Year 2026 receives PSHB benefits through United Healthcare. His daughter is transgender and is enrolled as a dependent on his PSHB plan. Since December 2025, she has been under treatment for her gender dysphoria and requires active monitoring. This was all covered under Mr. Poe's

PSHB plan prior to January 2026. The gender-affirming care Mr. Poe's daughter receives has not been covered under Mr. Poe's PSHB plan since January 1, 2026. The costs of his daughter's gender-affirming care will require Mr. Poe and his family to deplete their savings to meet her medical needs.

14.     Plaintiff Riley Roe is nonbinary and currently resides overseas in connection with his employment with the United States Department of State. Roe has been employed by the Department of State for nine years, has been enrolled in the FEHB Program since 2017, and in Plan Year 2026 receives FEHB benefits through the Foreign Service Benefit Plan. In 2025, Roe's treating healthcare provider recommended hormonal and surgical gender-affirming care. Roe has not yet commenced any course of gender-affirming care, and therefore does not qualify for the Carrier Letter 2025-01b narrow exceptions process for those mid-treatment. As of January 1, 2026, the necessary gender-affirming care Roe's providers have recommended is not covered under Roe's FEHB plan. Without coverage, Roe faces hundreds of dollars per month for HRT and approximately $50,000 for surgery. These costs would require Roe to deplete Roe's savings to receive the treatment recommended by Roe's healthcare provider.

15.     Defendant Scott Kupor is the Director of the U.S. Office of Personnel Management. He is a party in his official capacity. As Director, Mr. Kupor is responsible for overseeing OPM and its policies, including the administration of the FEHB and PSHB programs and the issuance and implementation of FEHB Program Carrier Letters, including the Carrier Letters at issue in this action.

**JURISDICTION AND VENUE**

16.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States, specifically Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., as amended.

17. Plaintiffs' claims for declaratory and injunctive relief are authorized pursuant to 28 U.S.C. §§ 2201 and 2202.

18. Venue properly lies in this Court pursuant to 42 U.S.C. § 2000e-5(f)(3) because this is a judicial district in which the unlawful employment practice is alleged to have been committed, in that OPM issued the Carrier Letters from its principal office located in the District of Columbia, and because OPM has its principal office in the District of Columbia. Venue is also proper pursuant to 28 U.S.C. § 1391(e)(1)(A) & (B) because Defendant is an agency of the United States headquartered in the District of Columbia, and a substantial part of the events or omissions giving rise to the claim occurred in the District of Columbia.

## ADMINISTRATIVE EXHAUSTION

19. On January 1, 2026—the same day Carrier Letter 2025-01b took effect— Plaintiffs Doe, Goe, Poe, and Roe initiated informal EEO counseling with OPM's Equal Employment Opportunity Office. By initiating contact with an EEO counselor within 45 days of the effective date of the discriminatory act giving rise to this action and due to the continuing violation of the Defendant's conduct, as set forth in 29 C.F.R. § 1614.105(a)(1), Plaintiffs' initiation of informal EEO counseling was timely made.

20. On January 1, 2026, Plaintiffs Doe, Goe, Poe and Roe articulated that their initial EEO contact was intended as a class action complaint on behalf of themselves and a class of all federal employees and retirees enrolled in FEHB or PSHB who have been or will be denied coverage for gender-affirming care for themselves or their dependents pursuant to Carrier Letter 2025-01b.

21. On January 30, 2026, OPM's EEO Office issued Final Interview Notices and Notices of Right to File a Formal Complaint to Plaintiffs Doe, Goe, Poe, and Roe, in a matter captioned as OPM EEO Case No. OPM-2026-004 and related case numbers. Each Notice

7

described the allegation as: "Discrimination based on sex (Transgender/Gender Identity) against [Plaintiff] and similarly-situated federal employees when the Office of Personnel Management mandated that health insurance coverage for gender-affirming care be eliminated on January 1, 2026."

22.    On February 3, 2026, Plaintiffs Doe, Goe, Poe, and Roe timely filed a formal EEO complaint with OPM's EEO Office. As set forth in counsel's cover letter dated February 3, 2026, the proposed class was defined as: All current and former federal employees enrolled in the Federal Employee Health Benefits Program (FEHB) or the Postal Service Health Benefits Program (PSHB) who have been, are being, or will be denied coverage for gender-affirming care for themselves or their dependents under those programs as a result of OPM's FEHB Program Carrier Letter Number 2025-01b, or any successor policy implementing the same exclusion.

23.    Because Plaintiffs Doe, Goe, Poe, and Roe's formal EEO complaints were filed within fifteen calendar days of receipt of the Notices of Right to File a Formal Complaint, each formal EEO complaint was timely filed. Each formal complaint included a motion for class certification pursuant to 29 C.F.R. § 1614.204.

24.    On February 5, 2026, OPM's EEO Office acknowledged receipt of each Plaintiff's formal complaint and informed Plaintiffs that the complaints would be held in abeyance pending a class certification determination by an EEOC Administrative Judge.

25.    On May 28, 2026, in a letter to the assigned EEOC Administrative Judge, Plaintiffs confirmed the class definition as provided above.

26.    OPM has not issued a final decision or order on Plaintiffs' formal EEO complaints, and no appeal has been filed with the EEOC. More than 180 days have elapsed since Plaintiffs filed their formal EEO complaints on February 3, 2026.

8

27.    Plaintiff Charlotte Coe initiated informal EEO counseling on an individual basis with OPM's Equal Employment Opportunity Office on April 15, 2026, on the same grounds as the aforementioned Plaintiffs. She indicated to the EEO counselor on April 27, 2026, that because her complaint is brought on the same grounds as the pending class matter previously initiated by the aforementioned Plaintiffs, it should be subsumed under that matter. As she was denied benefits less than 45 days prior to initiation of her EEO counseling (and thereafter), and because OPM's discriminatory policy continues through the present, Ms. Coe timely initiated EEO counseling.

28.    On May 15, 2026, OPM issued a Notice of Final Interview for Ms. Coe, and notified her of her right to file a formal EEO complaint within 15 days. In the Notice, OPM stated, "[p]lease be advised that the matters raised during counseling appear substantially identical or related to the allegations raised in the pending putative class complaint styled: [Daniel Doe, Gregory Goe, Patrick Poe, Riley Roe] v. Office of Personnel Management, which is currently awaiting a determination by the Equal Employment Opportunity Commission regarding class certification pursuant to 29 C.F.R. § 1614.204," and that if Ms. Coe elected to file a formal individual complaint raising claims substantially similar or identical to those asserted in the pending class complaint, the Agency may hold those claims in abeyance pursuant to EEOC regulations.

29.    On May 15, 2026, Ms. Coe timely filed a formal individual complaint of discrimination on the same grounds as stated in the aforementioned Plaintiffs' class complaint. OPM acknowledged receipt of the formal complaint on May 18, 2026.

30.    On June 16, 2026, OPM notified Ms. Coe that her claim is being held in abeyance because it involves issues that are identical to those raised in Daniel Doe, Gregory Goe, Patrick Poe, Riley Roe v. Office of Personnel Management.

31.     Plaintiffs have exhausted their administrative remedies and are entitled to bring this action in federal court pursuant to 42 U.S.C. § 2000e-16(c).

32.     This Complaint is timely filed.

## FACTS GIVING RISE TO RELIEF

**A.      Background on Gender Identity and Transgender Individuals**

33.     A person who is transgender is someone whose gender identity differs from the sex assigned to them at birth. "Sex assigned at birth" refers to the designation of sex generally noted on a person's birth certificate shortly after birth, typically based on the appearance of external genitalia. "Gender identity" is a person's fundamental, internal sense of their own gender. There is medical and scientific consensus that gender identity cannot be consciously changed or suppressed, and that efforts to change a person's gender identity are unethical and harmful to their health and well-being. Although the precise etiology of gender identity is not fully known, there is scientific consensus that it has biological roots.

34.     A woman who is transgender has a female gender identity but was designated male at birth. A man who is transgender has a male gender identity but was designated female at birth. Some transgender people identify as nonbinary—their gender identity is not confined to male or female.

35.     Transgender people exist across every community and have throughout recorded human history.

36.     Gender-affirming care is a classification encompassing several medical procedures and treatments that are medically necessary to treat distress related to gender incongruence that many transgender people experience. Gender-affirming care includes both endocrine and surgical treatments that are used to alleviate the symptoms and pain caused by gender incongruence and dysphoria. Gender-affirming care is not a singular, prescriptive course of treatment, but rather a

10

shorthand reference to a constellation of surgeries, procedures, and interventions, done individually or collectively, on a long-term basis or installments over a course of years. Those same treatments, in other contexts, can be performed to treat other medical conditions. Gender-affirming medical care may include, among other interventions, hormone replacement therapy and various gender-affirming surgical procedures, including breast augmentation, orchiectomy, vaginoplasty, hysterectomy, phalloplasty, metoidioplasty, and facial surgery.

37.   According to a July 2026 report by the Williams Institute at UCLA School of Law, it is estimated that at least 39,400 transgender federal employees, retirees, and dependents enrolled in FEHB have their care subject to the challenged policy exclusion.[3]

**B.    The Trump Administration's Campaign Against Transgender People**

38.   On January 20, 2025—his first day in office of his second term—President Trump issued EO 14168, which purported to define "sex" as "an individual's immutable biological classification as either male or female" and declared that this definition "does not include the concept of 'gender identity.'" It further defined "Female" as a "person belonging, at conception, to the sex that produces the large reproductive cell," and "Male" as the counterpart. EO 14168 purports that gender identity is a "false" "inchoate social concept" that "does not provide a meaningful basis for identification," and declares that it is the "policy of the United States to recognize two sexes, male and female," which "are not changeable." In doing so, EO 14168 denies the existence of transgender people, thereby rejecting overwhelming scientific and medical consensus.

---

[3] Jody L. Herman & Elana Redfield, *The Impact of Changes to the Federal Employee Health Benefits Program on Transgender People*, The Williams Institute, UCLA School of Law (2026), https://williamsinstitute.law.ucla.edu/wp-content/uploads/FEHB-Trans-Impact-Jul-2026.pdf.

39.    EO 14168 reflects, as multiple federal courts have found, discriminatory animus directed at transgender people. *See Talbott v. United States*, 775 F. Supp. 3d 283, 330–32 (D.D.C. 2025); *Washington v. Trump*, 768 F. Supp. 3d 1239, 1277 (W.D. Wash. 2025) (concluding that the Executive Order "reflects a bare desire to harm a politically unpopular group" and that "[i]ts language . . . denies and denigrates the very existence of transgender people"); *PFLAG, Inc. v. Trump*, 769 F. Supp. 3d 405, 445 (D. Md. 2025). Federal courts have also declared portions of EO 14168 unconstitutional. *See Schlacter v. United States*, 804 F. Supp. 3d 592 (D. Md. 2025); *San Francisco A.I.D.S. Found. v. Trump*, 786 F. Supp. 3d 1184 (N.D. Cal. 2025).

40.    EO 14168 was the opening salvo of a broader campaign by the Trump Administration to eliminate federal recognition of transgender persons and deny transgender people legal protections and access to medical care. In the early months of 2025, the Trump Administration issued several additional executive orders targeting transgender people, including: Executive Order 14148, rescinding Biden Administration executive orders protecting transgender people; Executive Order 14183, banning transgender people from serving in the military; Executive Order 14187, directing the defunding of institutions providing gender-affirming care to minors, declaring such care "a stain on our Nation's history"; and Executive Order 14190, eliminating funding for schools that supported gender-affirming content in their curricula. Together, these executive actions evidence the Administration's intent to use the levers of executive federal power to deny transgender people legal protections and access to care.

41.    EO 14168 mandated that agencies "remove all statements, policies, regulations, forms, communications, or other internal and external messages that promote or otherwise inculcate gender ideology, and shall cease issuing such statements, policies, regulations, forms,

communications or other messages." Defendant issued the Carrier Letters in order to implement EO 14168 as applied to federal employee health benefits.

**C.     OPM's Carrier Letter Eliminating Coverage for Gender-Affirming Care**

42.    From January 1, 2024, to January 1, 2026, OPM required FEHB and PSHB carriers to cover a broad range of gender-affirming care for enrollees and their dependents.

43.    On or about January 31, 2025, OPM issued FEHB Program Carrier Letter Number 2025-01a, which first signaled OPM's intent to prohibit coverage for gender-affirming care under FEHB and PSHB. OPM subsequently issued FEHB Program Carrier Letter Number 2025-01b, which expanded upon Carrier Letter 2025-01a and provided in relevant part:

> For Plan Year 2026, chemical and surgical modification of an individual's sex traits through medical interventions (to include "gender transition" services) will no longer be covered under the FEHB or PSHB Programs. This exclusion expands upon Carrier Letter 2025-01a and applies regardless of age.

44.    The PSHB Plan Year commenced on January 1, 2026. The FEHB Plan Year commenced on January 11, 2026, the first day of the first full pay period in January 2026, at which point all FEHB plans implemented the Carrier Letter.

45.    Carrier Letter 2025-01b eliminates coverage for "chemical and surgical" gender-affirming care from FEHB and PSHB plans. The exclusion applies regardless of medical necessity and regardless of age. It encompasses coverage for transgender and gender non-conforming enrollees or dependents seeking gender-affirming medical care.

46.    Carrier Letter 2025-01b provided for a narrow exceptions process for Plan Year 2026, applicable only to those "mid-treatment within a surgical and/or hormonal regimen for diagnosed gender dysphoria." This exceptions process is itself discriminatory on the basis of sex. OPM has excluded coverage for transgender or gender non-conforming enrollees and beneficiaries for care related to their gender transition while allowing coverage for the same or similar

hormones, surgeries, or sex-trait-related interventions when unrelated from gender transition. Transgender or gender non-confirming enrollees or beneficiaries whose treating providers have recommended gender-affirming care, but who have not yet commenced hormonal or surgical treatment, are excluded from coverage with no exceptions process available to them. Moreover, enrollees who were required to change FEHB carriers in Plan Year 2026—such as Plaintiff Doe, whose prior carrier, NALC, ceased to participate in FEHB in Plan Year 2026—may also be ineligible for the exceptions process because continuity of care determinations are carrier-specific.

47.     Moreover, Defendant neither defined the care that constitutes "mid-treatment" nor the criteria FEHB and PSHB carriers should consider or implement in setting up this exceptions process. Defendant instructed each FEHB and PSHB carrier to establish its own exceptions process and eligibility criteria, creating great uncertainty for transgender and gender non-confirming enrollees and beneficiaries regarding what, if any, of their necessary medical care would be covered.

48.     FEHB Carrier Letter Number 2026-07, issued March 31, 2026, prohibits insurers from offering any exceptions process beginning with Plan Year 2027.

49.     The Carrier Letters do not affect care sought by non-transgender enrollees and beneficiaries. Non-transgender enrollees seeking treatment for medical care for purposes unrelated to gender transition, including treatment that requires similar hormonal and surgical treatment, are not subjected to a coverage exclusion or an elaborate, opaque exceptions process. The Carrier Letters single out gender-affirming care, and gender-affirming care alone, for exclusion from FEHB and PSHB coverage.

50.     The Carrier Letters were issued solely in response to EO 14168 and the Trump Administration's broader campaign to eliminate federal recognition of transgender identity and

deny transgender people access to medical care. Their issuance reflects the same discriminatory animus toward transgender people that courts have found to underlie EO 14168 itself.

### D.    Impact on Plaintiffs and the Putative Class

51.    As a result of the Carrier Letters, all Plaintiffs have suffered immediate and concrete harm; each Plaintiff has been denied coverage for gender-affirming care for themselves or their dependents, or faces the imminent denial of such coverage. They are unable to pay out of pocket for the medically necessary gender-affirming procedures they need, are contemplating draining their savings, or are undertaking significant financial hardship to meet their medical needs. As a result, they continue to suffer from severe gender dysphoria, related distress and anxiety, stigma, and the risk of discrimination, violence, and harassment by others.

52.    As a result of Carrier Letters' exclusions of coverage for gender-affirming care, Plaintiffs have suffered harm, including but not limited to emotional distress, stigmatization, humiliation, a loss of dignity, and financial harm. By administering healthcare coverage to Plaintiffs that discriminates on the basis of sex, OPM has violated Title VII, for which the named Plaintiffs are entitled to compensatory damages, including but not limited to out-of-pocket damages, and consequential damages.

53.    Upon information and belief, many thousands of other current and former federal employees enrolled in FEHB or PSHB plans likewise have been or will be required to pay out-of-pocket expenses for care that should be covered by their health plans and that is similar to care provided to others within their health plans when required for purposes unrelated to gender transition.

54.    Upon information and belief, many thousands of other current and former federal employees enrolled in FEHB or PSHB plans similarly are unable to access coverage for medically necessary care for themselves or their dependents that should be covered by their health plans and

that is similar to care provided to others within their health plans when required for purposes unrelated to gender transition. Some have been forced to delay or forego gender-affirming care, exposing them to prolonged and avoidable suffering from untreated symptoms. The harm to Plaintiffs and the Classes is ongoing and constitutes a continuing violation.

## CLASS ACTION ALLEGATIONS

55.     Plaintiffs seek prospective injunctive relief and damages on behalf of two classes of similarly situated individuals under Rule 23(b)(2) and (b)(3), respectively, of the Federal Rules of Civil Procedure (Plaintiff Classes).

56.     The Plaintiff Class under Rule 23(b)(3) (the Damages Class) comprises current and former federal employees who are or have been enrolled in an FEHB or PSHB plan; have been referred for gender-affirming care, or have a dependent who has been referred for gender-affirming care by a treating provider; and at any time between January 1, 2025, to the date of final judgment incur out-of-pocket expenses and/or other compensable damages because they or their dependent were denied coverage or deterred from seeking coverage for gender-affirming care pursuant to OPM's FEHB Program Carrier Letter Numbers 2025-01b and 2026-07, or any successor policy implementing the same exclusion.

57.     The Plaintiff Class under Rule 23(b)(2) (the Injunctive Relief Class) comprises current and former federal employees who are or will be enrolled in the FEHB or the PSHB, and have been referred for gender-affirming care or have a dependent who has been referred for gender-affirming care by a treating provider, that is subject to OPM's FEHB Program Carrier Letter Numbers 2025-01b and 2026-07, or any successor policy implementing the same exclusion.

58.     Excluded from the Classes are any member of the immediate family of any Judge or Magistrate Judge presiding over this action.

16

59.    OPM's exclusion of gender-affirming care burdens plan holders who are transgender or gender non-conforming, or who have dependents who are transgender or gender non-conforming, by forcing them to choose between paying out-of-pocket for healthcare or foregoing needed treatment. In this way, OPM's conduct imposes an immediate and ongoing threat to the putative Rule 23(b)(2) class's rights under Title VII to be free from discrimination on the basis of sex in the compensation, terms, conditions, or privileges of employment.

60.    **Numerosity.** The Class is so numerous that joinder of all individual members is impractical. While the precise number of Class Members has not yet been ascertained and will be confirmed through discovery, it is substantial. The Williams Institute estimated at least 39,400 transgender individuals are covered by FEHB and PSHB health plans, including employees, retirees, and dependent beneficiaries. The Class therefore comprises several thousand individuals who are geographically dispersed across the country and around the world, making individual joinder impractical.

61.    **Commonality and Predominance of Common Questions.** Through the Carrier Letters, OPM has adopted and directed implementation of a uniform policy prohibiting FEHB and PSHB carriers from providing coverage for care sought for purposes of gender transition, subject only to a temporary, limited exception for certain individuals who are already mid-treatment. Plaintiffs and members of the proposed Classes are subject to this common policy and the resulting reduction in the health benefits provided to them through federal employment. Whether OPM's policy violates Title VII can be determined on the basis of evidence common to the Classes. Common questions of law and fact include:

(a) whether the Carrier Letters, on their face and/or as applied to members of the proposed Classes, discriminate on the basis of sex in violation of Title VII, 42 U.S.C. § 2000e-16(a);

(b) whether OPM adopted and directed FEHB and PSHB carriers to implement a uniform policy excluding coverage for care sought for purposes of gender transition;

(c) whether OPM's limited exception for Plan Year 2026 for certain individuals who were already mid-treatment eliminates, mitigates, or perpetuates the discriminatory operation and effects of the exclusion;

(d) whether OPM's adoption and implementation of the exclusion constitutes a discriminatory personnel action affecting federal employees; and

(e) whether class-wide declaratory and injunctive relief is appropriate.

62.    Common issues of law and fact predominate over any individual issues arising from Class Members' claims against OPM for unlawful discrimination in violation of Title VII.

63.    **Typicality.** Plaintiffs' claims are typical of the claims of the Classes. Each Plaintiff is a federal employee enrolled in an FEHB or PSHB plan; each has been referred by treating providers for gender-affirming care or has a dependent who has been referred for gender-affirming care; and each has been denied, faces imminent denial of, or has been deterred from seeking coverage for gender-affirming care—either for themselves or for their dependents—as a direct result of the Carrier Letters. Class Members are also federal employees or former federal employees who have been referred for gender-affirming care or have a dependent who has been referred for gender-affirming care, who were either denied, or face imminent denial of FEHB or PSHB health coverage due to the Carrier Letters, or were deterred from seeking coverage due to their or their treating providers' awareness of the policy. The claims of the Classes arise from the same nationwide policy and the same legal theory that Plaintiffs advance here. Plaintiffs Coe and Poe and the Rule 23(b)(3) class all seek to recover their out-of-pocket expenses and related damages incurred in being forced to pay out-of-pocket for or forgo gender-affirming care because

18

of OPM's enforcement and application of the Carrier Letters. Plaintiffs Doe, Goe, Coe, Poe, and Roe and the Rule 23(b)(2) class all seek injunctive relief to remove the Challenged Exclusion and permit them to obtain coverage for medically necessary gender-affirming care under FEHB and PSHB health insurance plans. Plaintiffs and members of the Rule 23(b)(2) class are and will continue to be subject to discrimination on the basis of sex by Defendant's conduct, and are and will continue to be injured as a result.

64.    **Adequacy of Representation.** Plaintiffs will fairly and adequately protect the interests of the Classes. Plaintiffs' interests are aligned with those of the Classes—each Plaintiff and each Class Member seeks restoration of FEHB and PSHB coverage for gender-affirming care. Plaintiffs have no interests adverse to those of the Classes. Plaintiffs are represented by experienced class counsel at Correia & Puth, PLLC, Cohen Milstein Sellers & Toll LLP, and the Human Rights Campaign Foundation, each of whom has extensive experience in complex class action litigation and employment discrimination law on behalf of federal employees.

65.    **Superiority.** A class action is superior to any other available method for the fair and efficient adjudication of this controversy. Prosecution of tens of thousands of individual actions by putative Class Members would be inefficient and would create the risk of inconsistent or varying adjudications establishing incompatible standards of conduct for Defendant. Putative Class Members may face significant barriers to bringing individual suits, including the burden and expense of independent litigation, reluctance to publicly disclose their own or their dependent's transgender identity, and limited access to counsel experienced in federal employment discrimination law. Collective adjudication provides the most efficient mechanism for resolving the common claims of the Classes.

66.    The requirements of Rule 23(b)(2) are met because Defendant has acted on grounds that apply generally to the Class—namely, the uniform, nationwide application of the Carrier Letters to all FEHB and PSHB plans—making final declaratory and injunctive relief appropriate with respect to the Class as a whole. The injunctive relief sought here is rescission of the Carrier Letters and restoration of FEHB and PSHB coverage for gender-affirming care under its previous terms. This would benefit the entire Class in the same way and remedy the same injury suffered by each Class Member.

## COUNT ONE

**Discrimination Based on Sex in Violation of Title VII of the Civil Rights Act of 1964 U.S.C. § 2000e-16(a)**

67.    Plaintiffs incorporate by reference each of the allegations contained in the preceding paragraphs of this Complaint as if set forth here in full.

68.    Title VII of the Civil Rights Act of 1964 provides that "all personnel actions affecting employees . . . shall be made free from any discrimination based on . . . sex." 42 U.S.C. § 2000e-16(a). In *Bostock v. Clayton County*, 590 U.S. 644, 660, 669 (2020), the Supreme Court held that discrimination based on transgender or gender identity status constitutes discrimination "because of sex" within the meaning of Title VII, because such discrimination "necessarily entails discrimination based on sex." For well over a decade before *Bostock*, the EEOC recognized that discrimination based on transgender identity is sex discrimination in violation of Title VII. *See Macy v. Dep't of Justice*, EEOC Appeal No. 0120120821, 2012 WL 1435995 (Apr. 20, 2012).

69.    Federal employee health benefits provided through FEHB and PSHB are terms, conditions, and privileges of employment within the meaning of Title VII. By eliminating coverage for gender-affirming care under FEHB and PSHB, Defendant has changed the terms, conditions, and privileges of employment for Plaintiffs and members of the Classes on the basis of sex.

70.    The Carrier Letters discriminate on the basis of sex on their face. Carrier Letter 2025-01b excludes "chemical and surgical modification of an individual's sex traits through medical interventions (to include 'gender transition' services)" from FEHB and PSHB coverage. This exclusion targets gender-affirming care—care that is sought by transgender and gender non-conforming people—and thereby singles out current and former employees who are transgender or gender non-conforming or who have transgender or gender non-conforming dependents for less favorable treatment and fewer employment benefits than accorded their non-transgender counterparts.

71.    The Carrier Letters also discriminate against Plaintiffs and the Classes on the basis of sex stereotyping. By denying Plaintiffs and the Classes access to coverage for care that aligns their or their dependents' physical characteristics with their gender identity, Defendant treats them adversely because they or their dependents do not conform to the sex stereotypes associated with their sex assigned at birth. Such sex stereotype-based discrimination violates Title VII.

72.    The Carrier Letters further discriminate on the basis of sex in their application to Plaintiffs and the Classes. The Carrier Letters are explicit that they limit the change to coverage for "chemical and surgical" treatment to those seeking those treatments for gender transition, and that individuals accessing similar treatment for reasons unrelated to gender transition may continue to seek coverage without such barriers. In contrast, Defendant refuses to cover gender-affirming care solely because it is prescribed as part of transgender and gender non-confirming enrollees' and beneficiaries' gender transition. This differential treatment, based on the transgender identity of the enrollee or their dependent, is discrimination based on sex in violation of Title VII.

73.    The Carrier Letters were issued in furtherance of EO 14168, which embodies discriminatory animus directed toward transgender people. The Carrier Letters are therefore also

21

a product of sex-based animus, and Defendant's conduct in issuing, implementing, and enforcing the Letters constitutes discrimination on the basis of sex.

74.    By issuing and implementing the Carrier Letters, Defendant has intentionally discriminated against Plaintiffs and the Classes with respect to the terms, conditions, and privileges of their employment, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16(a).

75.    As a direct and proximate result of Defendant's discrimination, Plaintiffs and the Classes have suffered and continue to suffer harm, including significant financial harm due to the denial of coverage for medically necessary care, emotional distress, fear of worsening gender dysphoria, and impairment to health and well-being of them and their family members.

## **PRAYER FOR RELIEF**

WHEREFORE, the premises considered, Plaintiffs respectfully pray that this Honorable Court:

a.    Certify the Injunctive Relief Class pursuant to Rule 23(b)(2) and the Damages Class pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure, on behalf of the Classes defined herein; appoint Plaintiffs Coe and Poe as class representatives of the Damages Class and all Plaintiffs as class representatives of the Injunctive Relief Class; and appoint Correia & Puth, PLLC, Cohen Milstein Sellers & Toll LLP, and the Human Rights Campaign Foundation as class counsel;

b.    Enter judgment in favor of Plaintiffs and the Classes and against Defendant;

c.    Declare that the Carrier Letters, and related Carrier Letters and policies are unlawful and violate Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16(a), by discriminating against Plaintiffs and all similarly situated individuals on the basis of sex;

d.    Issue a permanent injunction enjoining Defendant and his officers, employees, agents, successors, and all persons acting in concert with him from enforcing, implementing, or

22

giving effect to the Carrier Letters' exclusion of gender-affirming care from FEHB and PSHB coverage, or any successor policy or practice that prohibits FEHB or PSHB coverage for gender-affirming care;

e.      Order Defendant to direct each FEHB and PSHB carrier to remove from its plan documents any prohibition of coverage for gender-affirming care implemented pursuant to the Carrier Letters;

f.      Order Defendant to include in each FEHB and PSHB plan brochure a nondiscrimination provision stating, in plain language, that all coverage decisions will be made using nondiscriminatory standards and criteria, and that an enrollee's gender identity and the fact that a service or benefit is needed in connection with gender-affirming care will not be a basis for the denial of coverage under the plan;

g.      Order retroactive coverage for gender-affirming care denied to members of the Class pursuant to the Carrier Letters;

h.      Award all damages that Plaintiffs Coe and Poe and all similarly situated individuals in the Damages Class have sustained as a result of Defendant's unlawful conduct in an amount that fully compensates them for their actual damages, including but not limited to reimbursement for gender-affirming care for which they paid out-of-pocket, resulting from Defendant's unlawful conduct;

i.      Award compensatory damages to Plaintiffs Coe and Poe and to all similarly situated individuals in the Damages Class, for the emotional distress they have sustained;

j.      Award Plaintiffs and the Classes their reasonable attorneys' fees, costs, and expenses pursuant to 42 U.S.C. § 2000e-5(k) and other applicable authority;

k.      Award pre-judgment and post-judgment interest as permitted by law; and

23

l.      Grant such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues triable by right to a jury.


Date: August 3, 2026                    Respectfully submitted,


/s/ Cathy Harris
Cathy Harris (D.C. Bar No. 467206)
Jonathan C. Puth (D.C. Bar No. 439241)
Kelsey S. Speyer (D.C. Bar No. 90007426)
CORREIA & PUTH, PLLC
1400 16th Street NW, Suite 450
Washington, D.C. 20036
(202) 602-6500
charris@correiaputh.com
jputh@correiaputh.com
kspeyer@correiaputh.com


/s/ Harini Srinivasan
Harini Srinivasan (D.C. Bar No. 1032002)
Aniko Schwarcz (D.C. Bar No. 980631)
COHEN MILSTEIN SELLERS & TOLL LLP
1100 New York Avenue NW, Suite 800
Washington, DC 20005
(202) 408-4600
hsrinivasan@cohenmilstein.com
aschwarcz@cohenmilstein.com


/s/ Cynthia Cheng-Wun Weaver
Cynthia Cheng-Wun Weaver*
(NY Bar No. 5091848)
Ami Rakesh Patel* (CA Bar No. 325647)
HUMAN RIGHTS CAMPAIGN FOUNDATION
1640 Rhode Island Avenue NW
Washington, DC 20036
cynthia.weaver@hrc.org
ami.patel@hrc.org
*Pro hac vice motion pending

Counsel for Plaintiffs and the Proposed Classes


24