**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

DOE, *et al.*, on behalf of themselves and all persons similarly situated,

*Plaintiffs*,

v.

SCOTT KUPOR, in his official capacity as Director of the UNITED STATES OFFICE OF PERSONNEL MANAGEMENT,

*Defendant*.

No. 1:26-cv-2723

**PLAINTIFFS' MOTION FOR PROVISIONAL CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL**

# TABLE OF CONTENTS


I. INTRODUCTION ........ 1

II. BACKGROUND ........ 3

a. OPM's Carrier Letters Create a Categorical Ban on Coverage for Gender-Affirming Care in Plan Year 2027 ........ 3

b. Plaintiffs and Putative Class Members Have Been Harmed by Defendant's Unlawful Policies ........ 5

i. Plaintiff Vanessa Voe ........ 6

ii. Plaintiff Charlotte Coe ........ 7

iii. Harm to Putative Class Members ........ 8

III. LEGAL STANDARD ........ 9

IV. ARGUMENT ........ 10

a. The Proposed Class Satisfies the Requirements of Rule 23(a). ........ 10

i. The Proposed Class Satisfies the Numerosity Requirement. ........ 10

ii. The Proposed Class Satisfies the Commonality Requirement. ........ 13

iii. The Proposed Class Satisfies the Typicality Requirement. ........ 15

iv. Class Representatives and Class Counsel Will Adequately Represent the Class. 16

b. The Proposed Class Satisfies the Requirements of Rule 23(b)(2). ........ 18

c. The Court Should Appoint Counsel for Plaintiffs Voe and Coe as Class Counsel. ........ 19

V. CONCLUSION ........ 20

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Afghan and Iraqi Allies v. Pompeo*,
334 F.R.D. 449 (D.D.C. 2020)....14

*Amgen, Inc. v. Conn. Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013)....9

*Coleman ex rel. Bunn v. District of Columbia*,
306 F.R.D. 68 (D.D.C. 2015)....11

*Bynum v. District of Columbia*,
214 F.R.D. 27 (D.D.C. 2003)....14

*Califano v. Yamasaki*,
442 U.S. 682 (1979)....10

*Charles H. v. District of Columbia*,
2021 WL 2946127 (D.D.C. June 16, 2021)....9

*Damus v. Nielsen*,
313 F. Supp. 3d 317 (D.D.C. 2018)....9

*DL v. District of Columbia*,
302 F.R.D. 1 (D.D.C. 2013)....11

*DL v. District of Columbia*,
860 F.3d 713 (D.C. Cir. 2017)....9, 19

*Escobar Molina v. U.S. Dep't of Homeland Sec.*,
811 F. Supp. 3d 1 (D.D.C. 2025)....9, 10, 19

*Garnett v. Zeilinger*,
301 F. Supp. 3d 199 (D.D.C. 2018)....17

*Gen. Tel. Co. of Sw. v. Falcon*,
457 U.S. 147 (1982)....15

*Howard v. Liquidity Servs. Inc.*,
322 F.R.D. 103 (D.D.C. 2017)....11

*J.D. v. Azar*,
925 F.3d 1291 (D.C. Cir. 2019)....12, 13, 16, 17

*Jackson-Edney v. Labrador*,
839 F. Supp. 3d 979 (D. Idaho 2026)....10

*Kingdom v. Trump*,
2025 WL 1568238 (D.D.C. June 3, 2025)....................9, 13

*L.G.M.L. v. Noem*,
800 F. Supp. 3d 100 (D.D.C. 2025)....................9

*In re Lorazepam & Clorazepate Antitrust Litig.*,
202 F.R.D. 12 (D.D.C. 2001)....................16

*Moore v. Napolitano*,
926 F. Supp. 2d 8 (D.D.C. 2013)....................11

*Radosti v. Envision EMI, LLC*,
717 F. Supp. 2d 37 (D.D.C. 2010)....................11

*Randle v. SunTrust Bank, Inc.*,
2024 WL 706807 (D.D.C. Feb. 21, 2024)....................11

*Robertson v. District of Columbia*,
816 F. Supp. 3d 77 (D.D.C. 2026)....................13, 17

*Steele v. United States*,
159 F. Supp. 3d 73 (D.D.C. 2016)....................14

*Stephens v. Farmers Rest. Grp.*,
329 F.R.D. 476 (D.D.C. 2019)....................15

*Thorpe v. District of Columbia*,
303 F.R.D. 120 (D.D.C. 2014)....................17, 18

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011)....................13, 18, 19

**Statutes**

5 U.S.C. § 8902....................4

42 U.S.C. § 2000e-2(a)(1)....................14

**Other Authorities**

William B. Rubenstein, *Newberg and Rubenstein on Class Actions* (6th ed. 2026)....................13, 18

Pursuant to Federal Rule of Civil Procedure 23 and Local Civil Rule 23.1, Plaintiffs Charlotte Coe and Vanessa Voe (Named Plaintiffs or Proposed Class Representatives) respectfully move for provisional certification of the 2027 Plan Year Class in this action for purposes of preliminary injunctive relief and for appointment of class counsel under Rule 23(g).[1]

## I. INTRODUCTION

Starting imminently in Plan Year 2027, the U.S. Office of Personnel Management's (OPM or Defendant) Federal Employee Health Benefits Program (FEHB) Carrier Letter 2026-07 will categorically bar insurance coverage for chemical and surgical modification of an individual's sex traits through medical intervention only when sought to aid with gender transition (gender-affirming care) under FEHB or Postal Service Health Benefits Program (PSHB) plans nationwide. To protect their own rights under Title VII of the Civil Rights Act of 1964 (Title VII), which prohibits discrimination on the basis of sex in the compensation, terms, conditions, or privileges of employment, and the rights of others who are similarly situated, Plaintiffs Charlotte Coe and Vanessa Voe seek to certify the following class under Federal Rule of Civil Procedure 23(b)(2) (the 2027 Plan Year Class):

> All federal employees and retirees (a) who are or will be enrolled in the FEHB or PSHB during Plan Year 2027; (b) who have been or will be prescribed or referred for gender-affirming care for themselves or a covered dependent in Plan Year 2027; and (c) whose coverage for that care is or will be excluded in Plan Year 2027 under OPM's FEHB Program Carrier Letter 2026-07.[2]

---

[1] Pursuant to Local Civil Rule 7(m), Plaintiffs' counsel conferred with Defendant's counsel regarding this Motion, and Defendant's counsel stated that Defendant opposes this Motion.

[2] For FEHB, Plan Year 2027 starts January 10, 2027, and for PSHB, Plan Year 2027 starts January 1, 2027. *See* DailyFED Staff, *Important Dates for Federal Employees: October 2026 to January 2027*, Fed'n of Fed. Emp. Benefit Advocs. (Oct. 23, 2026), https://perma.cc/4UDF-6YLD (last visited Nov. 3, 2026); U.S. Off. of Pers. Mgmt., Federal Benefits Open Season Highlights 2027 Plan Year, https://www.opm.gov/healthcare-insurance/open-season/agency-benefits-officers/housing-for-os-materials/2026-federal-benefits-open-season-highlights-for-plan-year-2027.pdf (last visited Nov. 3, 2026).

Plaintiffs' Proposed Class readily satisfies Rule 23(a)'s four requirements: numerosity, commonality, typicality, and adequacy. *First*, the class is numerous, consisting of thousands of transgender federal employees, retirees, and covered dependents across the country who are or will be enrolled in FEHB or PSHB plans and whose coverage of gender-affirming care is categorically excluded under OPM's Carrier Letter 2026-07 for Plan Year 2027. Joinder for this large and geographically dispersed number of plaintiffs would be impractical. *Second*, there are questions of law and fact common to the class, as Plaintiffs' and Proposed Class Members' injuries result from the same unlawful OPM policy. *Third*, the Proposed Class Representatives' claims are typical of those of the class as each Proposed Class Representative (and member of the Proposed Class) is or will be enrolled in an FEHB or PSHB plan as an employee, retiree, or dependent; is undergoing gender-affirming care; and will have such care excluded from coverage in Plan Year 2027 pursuant to the same unlawful OPM policy. *Fourth*, the Proposed Class Representatives do not have any conflicts of interest with putative class members and will vigorously pursue the case on behalf of the class. And the undersigned counsel for Plaintiffs and the Proposed Class satisfy the requirements of Rule 23(g) and should be appointed as class counsel, given their robust experience litigating class actions, complex litigation, and employment discrimination matters on behalf of federal employees.

Lastly, certification of an injunctive relief class is appropriate under Rule 23(b)(2) because OPM's policy categorically denying coverage of gender-affirming care in Plan Year 2027 for any federal employee, retiree, or covered dependent enrolled in an FEHB or PSHB plan applies generally *across the class* and enjoining such a policy would provide relief *to each class member*. Each day that Defendant's policy remains in effect, Plaintiffs and putative class members suffer immediate and ongoing harm, including being forced to delay or forego medically necessary

gender-affirming care—exposing them to prolonged and avoidable suffering from untreated symptoms, in addition to emotional distress, fear of worsening gender-dysphoria, and stigmatization.

## II. BACKGROUND

The 2026 Federal Benefits Open Season (open enrollment) for Plan Year 2027 runs from November 9, 2026, through December 14, 2026. Choices must be made during this period for the entirety of the 2027 Plan Year; federal beneficiaries "cannot enroll, change [their] enrollment, or cancel [their] coverage in these programs outside the Open Season unless [they] experience a Qualifying Life Event."[3] Thus, Plaintiffs Coe and Voe and thousands of other transgender beneficiaries navigating open enrollment are presently facing unique, concrete, and imminent challenges to securing the medically necessary treatment and procedures recommended by their care providers for 2027. In Plan Year 2027, coverage of gender-affirming care will be categorically barred due to a twin pair of policies OPM has issued: Carrier Letters 2025-01b and 2026-07 (hereinafter referred to as the 2027 Exclusion).

### a. OPM's Carrier Letters Create a Categorical Ban on Coverage for Gender-Affirming Care in Plan Year 2027

On his first day in office, President Trump ordered federal agencies to withdraw recognition of transgender people's gender identities. Executive Order 14168, titled "Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government," declared sex immutable and characterized transgender identities as a "false claim." PI Ex. A, Exec. Order No. 14168, 90 Fed. Reg. 8615, 8615–16 (Jan. 20, 2025).[4] The Order directed

---

[3] U.S. Off. of Pers. Mgmt., *Active Federal Employees, Frequently Asked Questions, Why is Open Season Important to Me?*, https://perma.cc/ZEP2-BDJX (last visited Nov. 3, 2026).

[4] The exhibits cited herein ("PI Ex.") were filed as exhibits to Plaintiffs' Motion for Preliminary Injunction.

agencies to adopt that rule in their administration of federal law, remove policies and communications that supported what it termed "gender ideology," and end federal funding that promoted it. *Id.* 8616.

Without delay, OPM implemented the Administration's directives through its control over federal employees' health benefits. OPM contracts with private insurance carriers to provide insurance coverage to federal employees through the FEHB and the PSHB programs. OPM also dictates the scope of those carriers' coverage and determines the benefits and exclusions their contracts must contain. 5 U.S.C. § 8902(a), (d). Carrier letters convey OPM's coverage requirements and instructions to those insurers; annual call letters govern the benefit and rate proposals carriers submit for the coming plan year. *See* PI Ex. D, OPM, Carrier Letter No. 2026-07, *Federal Employees Health Benefits and Postal Service Health Benefits Programs Call Letter* at 1–2 (Mar. 31, 2026) (2027 Carrier Letter).[5]

On August 15, 2025, OPM issued Carrier Letter 2025-01b, effective January 1, 2026, which prohibited coverage for "chemical and surgical modification of an individual's sex traits through medical interventions (to include 'gender transition' services) . . . regardless of age." PI Ex. C, OPM, Carrier Letter No. 2025-01b, *Chemical and Surgical Sex-Trait Modification Services for Plan Year 2026 Proposals* at 1 (Aug. 15, 2025) ("2026 Carrier Letter"). OPM also barred carriers from identifying providers in their directories who furnish those services. *Id.* at 2. The 2026 Carrier Letter cites no medical study or new clinical finding to support this prohibition on coverage. For Plan Year 2026 only, the 2026 Carrier Letter required carriers to establish a case-

[5] Plaintiffs incorporate by reference their extended examination of the Trump Administration's directive to federal agencies to reject transgender identities and restrict access to gender-affirming care and OPM's implementation of the directive set forth in their Motion for Preliminary Injunction filed concurrently. *See* Dkt. No. 26 at Section II.

by-case exceptions process for enrollees who were "mid-treatment within a surgical and/or hormonal regimen for diagnosed gender dysphoria." *Id.*

On March 31, 2026, OPM then issued the 2027 Carrier Letter governing the 2027 Plan Year. Addressed to all FEHB and PSHB carriers, the 2027 Carrier Letter expressly retained prior guidance, including the 2026 Carrier Letter. 2027 Carrier Letter at 1–2. Under the heading "Sex Rejection Treatments," referring to gender-affirming care, OPM directed carriers to "remove any exceptions process" for enrollees "mid-treatment within a surgical and/or hormonal regimen for diagnosed gender dysphoria." *Id.* at 14. While counseling services remain covered, the 2027 Carrier Letter leaves carriers with *no* discretion to continue covering mid-treatment hormonal or surgical care. *Id.* And, just like the 2026 Carrier Letter, the 2027 Carrier Letter cites no medical study, HHS report, or clinical finding supporting elimination of gender-affirming care.

As such, the operative OPM policy in Plan Year 2027 subsumes the policy under the 2026 Carrier Letter and a categorical ban on coverage for gender-affirming care will commence imminently in Plan Year 2027. The Administration's rejection of transgender identities is now a mandatory term of federal employees' health coverage.

**b. Plaintiffs and Putative Class Members Have Been Harmed by Defendant's Unlawful Policies**

The Proposed Class that Plaintiffs seek to provisionally certify for purposes of preliminary injunctive relief includes: all federal employees and retirees (a) who are or will be enrolled during Plan Year 2027 in the FEHB or PSHB; (b) who have been or will be prescribed or referred by their treating provider for gender-affirming care for themselves or a covered dependent in Plan Year 2027; and (c) whose coverage for that care has been or will be excluded in Plan Year 2027 due to OPM's 2027 Carrier Letter.

Presently, transgender beneficiaries, including Plaintiffs, navigating open enrollment are facing unique, concrete, and imminent challenges to securing medically necessary treatment and procedures recommended by their care providers for 2027. The choices presented during open season are constrained by a rule that applies to every available plan: none may cover hormonal or surgical gender-affirming care in 2027. For Plaintiffs Coe and Voe, who have already lost coverage, the 2027 Exclusion will continue that denial and, importantly, deepen its consequences. For class member beneficiaries receiving care under a 2026 exception, it will end that coverage, bringing with it certainty of interrupted or wholly cancelled care that will cause irreparable harm. *See* 2026 Carrier Letter at 1–2; 2027 Carrier Letter at 2, 14; PI Ex. G, Declaration of Vanessa Voe (Voe Decl.) ¶¶ 7-8, 10; PI Ex. F, Declaration of Charlotte Coe (Coe Decl.) ¶¶ 8, 10; PI Ex. J, Declaration of Amy R. (Amy R. Decl.) ¶¶ 4, 7–10; PI Ex. K, Declaration of Quinn H. (Quinn H. Decl.) ¶¶ 6–9, 14.

***i. Plaintiff Vanessa Voe***

Plaintiff Vanessa Voe is a new federal employee who has had FEHB insurance coverage since September 2026. Voe Decl. ¶¶ 1–3. Ms. Voe is transgender and since 2021, Ms. Voe has received hormone replacement therapy (HRT) and has had gender-affirming surgeries. *Id.* ¶¶ 4–5. When deciding to take the new job, she was forced to choose between everything she had worked toward in her career for the past decade and the loss of her gender-affirming healthcare. *Id*. Seeking employment elsewhere to obtain coverage for this care was not a viable option for Ms. Voe. *Id.* ¶ 12. She works at the foremost lab in the country for the work she does, and there are very few jobs in her specialty. *Id.*

However, Ms. Voe needs ongoing HRT, including in 2027. Without HRT, she would suffer "irreversible harm." *Id.* ¶ 8. At this point in Ms. Voe's gender transition, her body has no mechanism to produce the hormones it needs to stay healthy. *Id*. Her doctors have informed her

that going without HRT can cause weakening in her bones, muscle deterioration, and other withdrawal symptoms. *Id.* She is anxious about whether she will be able to afford the gender-affirming care she needs, which would cost her approximately $2,500 per year. *Id.* ¶ 7–8. As she states, "I fear the prospect of being unable to obtain the medication that I need and going back to a version of myself I don't recognize anymore. Without HRT, my mental health suffers and my body suffers irreversible harm." *Id.* ¶ 8.

***ii. Plaintiff Charlotte Coe***

Plaintiff Charlotte Coe is a federal employee who has held FEHB insurance since 2018. Coe Decl. ¶¶ 3–4. She is a transgender female who has received gender-affirming health care for nearly a decade. *Id.* ¶ 6. She requires continuing care, including HRT and post-surgical care, to monitor her vaginoplasty. *Id.* ¶ 7. During Plan Year 2026, due to the exceptions process in place, Ms. Coe was uncertain as to how much of her healthcare would be covered under OPM's new policy. *Id.* ¶ 8. As the year progressed, Ms. Coe unexpectedly had to pay thousands of dollars in 2026 out-of-pocket for her medically necessary care, including HRT. *Id.* Over the past three months, her situation has "drastically worsened," as she has had complications from her vaginoplasty that cause her daily pain and discomfort. *Id.* ¶ 9. Because of a lesion that has developed, sitting is often highly aggravating and causes her significant pain. *Id.* It took several appointments with various providers before her gender-affirming care doctor correctly diagnosed this issue. *Id.* ¶ 11. Her appointments with this doctor were not covered by her insurance. *Id.* To permanently correct the issue, Ms. Coe's doctor now recommends another surgery, which could cost tens of thousands of dollars and would not be covered by her insurance. *Id.* However, even if she could afford the surgery out-of-pocket, her doctor's practice does not perform surgery for those without insurance coverage. *Id.*

During FEHB's open enrollment period, which spans from November 9 to December 14, 2026, Ms. Coe is considering her options for healthcare, but none of the FEHB plans will cover her gender-affirming care. *Id.* ¶ 12. She fears that without HRT, she will have immediate, dire, and permanent medical consequences. *Id.* ¶ 13. Because of the surgeries she has had, her body no longer makes the hormones that it needs to function; she requires HRT to ensure bone and muscle health. *Id.* Without HRT, she would lose energy and her emotional balance would suffer. *Id.* Stopping HRT would have a significant and dire impact on her emotional well-being. *Id.* In her words, it would cause her to "lose the life [she] worked really hard to build" and she would "lose [her]self." *Id.* Before starting HRT, she experienced suicidal ideation and depression. *Id.* Although her ongoing gender transition has alleviated those terrible feelings, she fears that those symptoms will return if she no longer has access to HRT. *Id.*

***iii. Harm to Putative Class Members***

Putative class members likewise are experiencing irreparable harm due to the 2027 Exclusion. For example, to prepare for the loss of her HRT coverage in 2027, Amy R., a transgender employee of the U.S. Geological Survey, is using opened estrogen vials beyond their recommended 28-day limit so that she can stockpile medication, despite the contamination risk. Amy R. Decl. ¶¶ 3, 7–10. Other putative class members describe the same obstacle they and covered dependents are facing in accessing care. Christine F., a transgender employee of the U.S. Fish and Wildlife Service, reports that her surgery would cost approximately $100,000 without coverage—an amount she cannot pay—and that she would have to delay it indefinitely. PI Ex. L, Declaration of Christine F. ¶¶ 3, 9, 12–14. Nancy F., a nurse at a Veterans Affairs Medical Center whose adult transgender daughter is covered through her FEHB benefits, describes years of waiting for her daughter's surgical consultation, only to confront an anticipated six-figure surgery cost her family cannot afford. PI Ex. N, Declaration of Nancy F. ¶¶ 3, 6–11. Just like the Named

Plaintiffs, members of the putative class require ongoing HRT or their bodies will suffer and alter irreparably. *See* Quinn H. Decl. ¶¶ 8–9; PI Ex. M, Declaration of Jennifer C. ¶ 9; Nancy F. Decl. ¶ 8.

## III. LEGAL STANDARD

Under Federal Rule of Civil Procedure 23, "[a]t an early practicable time after a person sues . . . as a class representative, the court must determine by order whether to certify the action as a class action." Fed. R. Civ. P. 23(c)(1)(A). To certify a class, Plaintiffs must show that the class they propose complies with the requirements of Rule 23(a)—numerosity, commonality, typicality, and adequacy. *See Amgen, Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 460 (2013). "[I]f Rule 23(a) is satisfied," Plaintiffs then must show that their case meets the requirements of one of the three types of class actions under Rule 23(b). Fed. R. Civ. P. 23(b). Class certification under Rule 23(b)(2) is appropriate where the Defendants have "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "Rule 23(b)(2) exists so that parties and courts, especially in civil rights cases like this, can avoid piecemeal litigation when common claims arise from systemic harms that demand injunctive relief." *DL v. District of Columbia*, 860 F.3d 713, 726 (D.C. Cir. 2017).

Courts in this District have commonly granted provisional class certification for the purpose of granting a preliminary injunction. *See, e.g.*, *Escobar Molina v. U.S. Dep't of Homeland Sec.*, 811 F. Supp. 3d 1 (D.D.C. 2025); *L.G.M.L. v. Noem*, 800 F. Supp. 3d 100 (D.D.C. 2025); *Charles H. v. District of Columbia*, 2021 WL 2946127 (D.D.C. June 16, 2021); *Kingdom v. Trump*, 2025 WL 1568238 (D.D.C. June 3, 2025). "In granting such provisional certification, the Court must still satisfy itself that the requirements of Rule 23 have been met." *Damus v. Nielsen*, 313 F. Supp. 3d 317, 329 (D.D.C. 2018). "Provisional certification does not lessen the rigor of Rule 23 .

. . but the court proceeds with the understanding that [a]n order that grants . . . class certification may be altered or amended before final judgment[.]" *Escobar Molina*, 811 F. Supp. 3d at 55 (citation modified); *accord Jackson-Edney v. Labrador*, 839 F. Supp. 3d 979, 1004 (D. Idaho 2026) (granting provisional certification for purposes of preliminary injunctive relief of a class of transgender Idaho residents alleging violations of Fourteenth Amendment due process and equal protection).

## IV. ARGUMENT

The U.S. Supreme Court has long recognized that class actions are an appropriate vehicle for requesting injunctive relief in light of the "principles of equity jurisprudence." *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979). For the purpose of requesting a preliminary injunction, Named Plaintiffs, Ms. Coe and Ms. Voe, seek provisional certification of the Class under Rule 23(b)(2), defined as and consisting of:

> All federal employees and retirees (a) who are or will be enrolled in the FEHB or PSHB during Plan Year 2027; (b) who have been or will be prescribed or referred for gender-affirming care for themselves or a covered dependent in Plan Year 2027; and (c) whose coverage for that care is or will be excluded in Plan Year 2027 under OPM's FEHB Program Carrier Letter 2026-07.

Named Plaintiffs seek appointment as Class Representatives. In addition, Named Plaintiffs seek appointment of their counsel as Class Counsel.

### a. The Proposed Class Satisfies the Requirements of Rule 23(a).

Named Plaintiffs and the Proposed Class of thousands of federal employees, retirees, and covered dependents are all subject to Defendant's extralegal 2027 Exclusion, thus satisfying Rule 23(a)'s requirements of numerosity, commonality, typicality, and adequacy.

#### i. The Proposed Class Satisfies the Numerosity Requirement.

The Proposed Class satisfies Rule 23's requirement that it be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). While Rule 23(a)(1) does not impose a

specific numerical threshold for when joinder will be found to be impracticable, courts in this District have generally found that "numerosity is satisfied when a proposed class has at least forty members." *Howard v. Liquidity Servs. Inc.*, 322 F.R.D. 103, 117 (D.D.C. 2017) (quoting *Coleman ex rel. Bunn v. District of Columbia*, 306 F.R.D. 68, 76 (D.D.C. 2015)); *accord Radosti v. Envision EMI, LLC*, 717 F. Supp. 2d 37, 51 (D.D.C. 2010). In examining "the number of potential class members, the Court need only find an approximation of the size of the class, not an exact number of putative class members." *Coleman*, 306 F.R.D. at 76 (citation modified). The Court may "draw reasonable inferences from the facts presented to find the requisite numerosity." *Id.* (citation modified). "Demonstrating impracticability of joinder does not mandate that joinder of all parties be impossible—only that the difficulty or inconvenience of joining all members of the class make use of the class action appropriate." *DL v. District of Columbia*, 302 F.R.D. 1, 11 (D.D.C. 2013) (citation modified), *aff'd*, 860 F.3d 713 (D.C. Cir. 2017).

Here, the Proposed Class readily meets this requirement as joinder would be impractical with members of the Proposed Class in the thousands and geographically dispersed across the country.[6] At least 39,400 transgender individuals are covered by FEHB and PSHB health plans, including employees, retirees, and dependent beneficiaries. *See* PI Ex. E, Declaration of Jody Herman (Herman Decl.) ¶¶ 12–22. Moreover, evidence from the 2022 U.S. Transgender Survey—the largest survey to examine the experiences of transgender people in the U.S.—reflects that at the time the survey was conducted, 50% of adult respondents were currently receiving hormone

[6] *See, e.g.*, *Moore v. Napolitano*, 926 F. Supp. 2d 8, 28 (D.D.C. 2013) (finding joinder impractical where the class members were geographically dispersed); *Randle v. SunTrust Bank, Inc.*, 2024 WL 706807, at *3 (D.D.C. Feb. 21, 2024) (finding numerosity satisfied and that joinder would be impracticable because the employer "operates nationwide" and "class members are geographically dispersed across the country").

treatments. *Id.* ¶¶ 26–27.[7] For many transgender individuals, gender-affirming HRT happens over the course of years and can be a lifelong treatment.[8] In the 2022 U.S. Transgender Survey, 90% of adult respondents who had ever received HRT reported that they were still receiving it. Herman Decl. ¶ 27. Applying this statistic to the estimated number of transgender federal employees, 13,700, it is reasonable to infer that at least an estimated 6,850 transgender federal employees are receiving HRT and would be impacted by the 2027 Exclusion. *Id.* ¶¶ 18, 28. This figure notably does not capture transgender retirees and dependents covered by FEHB and PSHB health plans whose coverage will also be impacted. As such, it is a reasonable approximation that the Proposed Class consists of thousands of transgender individuals who are covered by FEHB and PSHB health plans and are harmed by OPM's categorical exclusion of coverage of gender-affirming care.

Further, these numbers likely underestimate the size of the Proposed Class because the Proposed Class includes unnamed future claimants, including (1) transgender individuals who are undergoing gender-affirming care or whose treatment providers have recommended starting gender-affirming care who will join the federal government during Plan Year 2027, receive healthcare coverage under FEHB or PSHB health plans, and suffer immediate and irreparable injury due to the 2027 Exclusion, and (2) transgender individuals covered by FEHB and PSHB health plans whose treatment providers will recommend starting gender-affirming care in Plan Year 2027 and who will suffer immediate and irreparable injury due to the 2027 Exclusion. *See, e.g.*, *J.D. v. Azar*, 925 F.3d 1291, 1322 (D.C. Cir. 2019) (Classes that include "future claimants generally meet the numerosity requirement due to the 'impracticality of counting such class

[7] *See also* Ankit Rastogi et al., *Health and Wellbeing: A Report of the 2022 U.S. Transgender Survey*, Advocs. for Transgender Equal. (2025), https://perma.cc/CC2F-SL8S.

[8] Helene Frances Hedian, *Gender-Affirming Hormone Therapy (GAHT)*, Johns Hopkins Medicine (June 9, 2026), https://www.hopkinsmedicine.org/health/expert-qa/gender-affirming-hormone-therapy-gaht.

members, much less joining them.'" (quoting 1 William B. Rubenstein, *Newberg and Rubenstein on Class Actions* § 3:15 (6th ed. 2026))); *Kingdom*, 2025 WL 1568238, at *13. The Proposed Class therefore meets the numerosity requirement of Rule 23(a)(1).

**ii. The Proposed Class Satisfies the Commonality Requirement.**

Under Rule 23(a)(2), class certification is appropriate where "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality requires more than the identification of the purported violation of the same provision of law. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Plaintiffs' "claims must depend upon a common contention" that "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* "'Where plaintiffs allege widespread wrongdoing by a defendant[,] a uniform policy or practice that affects all class members' satisfies the commonality requirement." *Robertson v. District of Columbia*, 816 F. Supp. 3d 77, 93 (D.D.C. 2026) (quoting *Thorpe v. District of Columbia*, 303 F.R.D. 120, 145 (D.D.C. 2014)). "The presence of a single such common question [susceptible to classwide proof and resolution] can suffice to satisfy Rule 23(a)(2)." *J.D.*, 925 F.3d at 1321.

Here, commonality is satisfied as Plaintiffs seek a preliminary injunction enjoining a "uniform policy or practice that affects all class members." *Robertson*, 816 F. Supp. 3d at 93 (quoting *Thorpe*, 303 F.R.D. at 145). Defendant's 2027 Carrier Letter imposes on the Named Plaintiffs and putative class members a categorical prohibition on FEHB and PSHB coverage for gender-affirming care in Plan Year 2027. Each putative class member will be subject to this common policy by OPM, will be denied coverage for gender-affirming care in Plan Year 2027

starting on January 10, 2027 for FEHB and January 1, 2027 for PSHB,[9] or upon enrollment, if later, and will suffer immediate and concrete harm from the resulting reduction in health benefits provided to them through their federal employment.

Common questions of law and fact include, but are not limited to: (1) whether the 2027 Exclusion, on its face and/or as applied to members of the Proposed Class, discriminates on the basis of sex in violation of Title VII, 42 U.S.C. § 2000e-2(a)(1) and (2) whether OPM directed FEHB and PSHB carriers to implement a uniform policy categorically excluding coverage for care sought for purposes of gender transition. "The ways in which these questions are answered will be common to and dispositive of each and every proposed class member's individual underlying claims. Stated differently, because the government's polic[y] appl[ies] equally and generally to the entire class, the truth or falsity of these questions would resolve an issue that is central to the validity of each one of the claims in one stroke." *Steele v. United States*, 159 F. Supp. 3d 73, 80 (D.D.C. 2016) (citation modified).

Individual factual differences among class members present no obstacle to commonality here. *See, e.g.*, *Bynum v. District of Columbia*, 214 F.R.D. 27, 33 (D.D.C. 2003) ("[F]actual variations among the class members will not defeat the commonality requirement, so long as a single aspect or feature of the claim is common to all proposed class members."); *Afghan and Iraqi Allies v. Pompeo*, 334 F.R.D. 449, 459 (D.D.C. 2020) ("[C]ourts regularly certify classes where individual members have different factual circumstances."). The 2027 Exclusion applies uniformly to all FEHB and PSHB plan holders—it does not distinguish between transgender or gender non-conforming federal employees, retirees, or spouses and children enrolled as dependents under FEHB or PSHB plans. Any factual differences among Proposed Class Members, such as which

[9] DailyFED, *supra* note 2; U.S. Off. of Pers. Mgmt., Federal Benefits Open Season Highlights 2027 Plan Year, *supra* note 2.

medical intervention the Plaintiffs and Proposed Class Members require or whether their treatment is ongoing or has yet to begin, are immaterial to the claims at issue. The claims of all members of the Proposed Class depend on common contentions. All members of the Proposed Class are undergoing gender-affirming care, have a dependent undergoing gender-affirming care, or their dependent or they will start gender-affirming care in Plan Year 2027, all of which will be categorically barred from coverage under OPM's discriminatory 2027 Exclusion.

The proposed Plan Year 2027 Class only encompasses those who have been referred to or prescribed gender-affirming care or will require such care in Plan Year 2027 that is subject to the 2027 Exclusion. Thus, the change between OPM's 2026 and 2027 policies, solely to eliminate the exceptions process for individuals who are mid-treatment in their hormonal or surgical care, does not change the fundamental common question to the Plan Year 2027 Class of individuals who are subject to the 2027 Exclusion: whether such a categorical ban on gender-affirming care is lawful under Title VII. Accordingly, the Proposed Class satisfies Rule 23(a)(2)'s commonality requirement.

**iii. The Proposed Class Satisfies the Typicality Requirement.**

Typicality requires that "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Commonality and typicality "tend to merge." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982). "The requirement for 'typicality' is satisfied 'if each class member's claim arises from the same course of events that led to the claims of the representative parties and each class member makes similar legal arguments to prove the defendant's liability.'" *Stephens v. Farmers Rest. Grp.*, 329 F.R.D. 476, 483 (D.D.C. 2019) (quoting *Trombley v. Nat'l City Bank*, 826 F. Supp. 2d 179, 192 (D.D.C. 2011)). The underlying facts do not need to be exactly the same for typicality to be satisfied, as long as "the claims or defenses of the representatives and the members of the class stem from a single event or

a unitary course of conduct, or if they are based on the same legal or remedial theory[,]" "typicality is ordinarily met[.]" *J.D.*, 925 F.3d at 1322 (citation modified); *see also In re Lorazepam & Clorazepate Antitrust Litig.*, 202 F.R.D. 12, 27 (D.D.C. 2001) ("[T]he existence of varying fact patterns to support the claims of individual class members does not mandate a finding of a lack of typicality, as long as the claims arise out of the same legal or remedial theory.").

Here, there is no question that the Proposed Class Representatives' claims are typical of the claims of the class. Each Proposed Class Representative is enrolled in an FEHB or PSHB plan, Voe Decl. ¶ 3, Coe Decl. ¶ 4; each requires gender-affirming care, including ongoing HRT because their bodies cannot produce hormones, Voe Decl. ¶¶ 6–8, Coe Decl. ¶¶ 6–7, 13; and each will be categorically denied coverage for gender-affirming care as a result of the 2027 Exclusion. *See* 2027 Carrier Letter. The claims of the Proposed Class Representatives and the members of the Proposed Class "stem from" OPM's uniform, discriminatory policy, and are based on the same legal theory that OPM's policy violates Title VII. *J.D.*, 925 F.3d at 1322. They are thus subject to the same course of conduct: the 2027 Exclusion and resulting agency action. Furthermore, because the Class is limited to individuals who are subject to the 2027 Exclusion—that is, individuals who are undergoing or will require gender-affirming care before the end of Plan Year 2027—as explained in Plaintiffs' Motion for Preliminary Injunction, the class members all face similarly irreparable injuries requiring emergency preliminary relief. Accordingly, the Proposed Class satisfies Rule 23(a)(3)'s typicality requirement.

**iv. Class Representatives and Class Counsel Will Adequately Represent the Class.**

The last Rule 23(a) requirement, adequacy, requires Plaintiffs to establish that the class representatives will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement "embraces two components: the class representative (i) 'must not have

antagonistic or conflicting interests with the unnamed members of the class' and (ii) 'must appear able to vigorously prosecute the interests of the class through qualified counsel.'" *J.D.*, 925 F.3d at 1312 (quoting *Twelve John Does v. District of Columbia*, 117 F.3d 571, 575 (D.C. Cir. 1997)).

The Proposed Class Representatives meet both elements here. *First*, the Proposed Class Representatives and putative class members are all subject to the 2027 Exclusion, which categorically prohibits FEHB and PSHB carriers from providing coverage for gender-affirming care in Plan Year 2027, and the resulting reduction in health benefits provided to them through their federal employment. As such, Proposed Class Representatives and the putative class members share a common interest in restoring FEHB and PSHB coverage for gender-affirming care in Plan Year 2027. There is no current or potential conflict of interest between Proposed Class Representatives and the putative class members, who all seek the same relief—declaratory and injunctive relief for the same unlawful policy to which their health care coverage is subject. *See, e.g.*, *Robertson*, 816 F. Supp. 3d at 104 (finding that the plaintiffs satisfied the adequacy requirement where "named plaintiffs challenge the same conduct by the [defendant] that putative class members have been subjected to, and allege the same harms as putative class members").

*Second*, Proposed Class Representatives will vigorously prosecute the interests of the class through qualified counsel. Rule 23(a)(4) "does not require . . . that the proposed class representatives have legal knowledge or a complete understanding of the representative's role in class litigation." *Thorpe*, 303 F.R.D. at 151 (D.D.C. 2014). Class representatives are found to be inadequate in "flagrant cases, where the putative class representatives display an alarming unfamiliarity with the suit, display an unwillingness to learn about the facts underlying their claims, or are so lacking in credibility that they are likely to harm their case." *Garnett v. Zeilinger*, 301 F. Supp. 3d 199, 210–11 (D.D.C. 2018).

Here, the Proposed Class Representatives' declarations make clear that they understand the claims asserted and their responsibilities as class representatives, and they are willing to protect the interests of the class. *See* Voe Decl. ¶¶ 14–18; Coe Decl. ¶¶ 18–22. That is sufficient to be adequate representatives for the class.

Under Rule 23(a)(4), courts also examine whether counsel are "qualified, experienced, and generally able to conduct the litigation." 1 William B. Rubenstein, *Newberg and Rubenstein on Class Actions* § 3:72 (6th ed. 2026). Plaintiffs briefly address class counsel's adequacy here—the requirements of lack of conflicts of interests and class counsel's competency—and further address how the undersigned counsel amply meet the criteria of Rule 23(g) in Section IV(c) below. *See Thorpe*, 303 F.R.D. at 150. Here, no conflict of interest exists between counsel and the class, and as discussed in Section III, *infra*, counsel has adequately represented the class and will continue to do so and has robust experience litigating complex class actions and employment discrimination cases on behalf of federal employees. As such, Plaintiffs have satisfied the adequacy requirement of Rule 23(a)(4).

**b. The Proposed Class Satisfies the Requirements of Rule 23(b)(2).**

Plaintiffs have satisfied the requirements of Rule 23(b)(2), as they seek uniform classwide injunctive relief prohibiting Defendant from requiring or enforcing the 2027 Exclusion against Plaintiffs and the class, pending final judgment, and thereby allowing FEHB and PSHB carriers to administer coverage for Plaintiffs and the class under otherwise applicable, nondiscriminatory plan terms.

Class certification under Rule 23(b)(2) is appropriate where the defendants have "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2); *see also Wal-Mart*, 564 U.S. at 360 ("Rule 23(b)(2) applies only when a single injunction

or declaratory judgment would provide relief to each member of the class.”). “The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.” *Wal-Mart*, 564 U.S. at 360 (citation modified). “Rule 23(b)(2) has been interpreted as imposing two requirements: (1) the defendant’s action or refusal to act must be generally applicable to the class, and (2) plaintiff must seek final injunctive relief or corresponding declaratory relief on behalf of the class.” *Escobar Molina*, 811 F. Supp. 3d at 61 (citing *Steele*, 159 F. Supp. 3d at 81).

Here, both requirements are satisfied. Defendant’s action, issuing the 2027 Exclusion, is generally applicable to the Proposed Class as it applies uniformly and nationwide to all FEHB and PSHB plans. Plaintiffs, on behalf of all members of the Proposed Class, seek declaratory and injunctive relief that would uniformly benefit the whole Proposed Class and would remedy the harm suffered by each class member as a result of the denial of coverage—a single injunction preliminarily enjoining OPM from requiring or enforcing the 2027 Exclusion and directing OPM to instruct carriers to remove this exclusion from the terms of FEHB and PSHB coverage for gender-affirming care. Ordinary, non-discriminatory plan terms would continue to apply. This is precisely the type of case for which Rule 23(b)(2) is designed as “Rule 23(b)(2) exists so that parties and courts, especially in civil rights cases like this, can avoid piecemeal litigation when common claims arise from systemic harms that demand injunctive relief.” *DL*, 860 F.3d at 726. As such, Plaintiffs’ Proposed Class satisfies the requirement of Rule 23(b)(2).

**c. The Court Should Appoint Counsel for Plaintiffs Voe and Coe as Class Counsel.**

Upon certifying a class, the court must appoint class counsel. Fed. R. Civ. P. 23(g)(1). Plaintiffs are jointly represented by attorneys from Cohen Milstein Sellers & Toll LLP, Correia &

Puth PLLC, and the Human Rights Campaign Foundation, who in the aggregate bring significant experience litigating class actions in federal court, representing clients in complex litigation in federal court, and litigating sex discrimination matters on behalf of federal employees. *See* Declaration of Harini Srinivasan ¶¶ 2–6. Counsel have devoted substantial time and resources to developing the claims in this action and will continue to do so, and counsel are well-versed in the intricacies of employment discrimination law and law governing class action proceedings. *See id.* ¶¶ 2–7. Together, these three legal organizations have ample resources that they are prepared to commit to representing the class. *See id.* ¶¶ 7–9.

Therefore, the Court should appoint Cohen Milstein Sellers & Toll LLP, Correia & Puth, PLLC, and the Human Rights Campaign Foundation as counsel for the class in this case.

## V. CONCLUSION

For the foregoing reasons, this Court should grant the Motion for Provisional Class Certification; appoint Plaintiffs Charlotte Coe and Vanessa Voe as Class Representatives for the 2027 Plan Year Class; and appoint the undersigned as class counsel.

Dated: November 4, 2026

Respectfully submitted,

/s/ Harini Srinivasan
Harini Srinivasan (D.C. Bar No. 1032002)
Aniko Schwarcz (D.C. Bar No. 980631)
COHEN MILSTEIN SELLERS & TOLL LLP
1100 New York Avenue NW, Suite 800
Washington, DC 20005
(202) 408-4600
hsrinivasan@cohenmilstein.com
aschwarcz@cohenmilstein.com

Cathy Harris (D.C. Bar No. 467206)
Jonathan C. Puth (D.C. Bar No. 439241)
Kelsey S. Speyer (D.C. Bar No. 90007426)

CORREIA & PUTH, PLLC
1400 16th Street NW, Suite 450
Washington, D.C. 20036
(202) 602-6500
charris@correiaputh.com
jputh@correiaputh.com
kspeyer@correiaputh.com

Cynthia Cheng-Wun Weaver (NY Bar No. 091848)
Ami Rakesh Patel (CA Bar No. 325647)
HUMAN RIGHTS CAMPAIGN FOUNDATION
1640 Rhode Island Avenue NW
Washington, DC 20036
cynthia.weaver@hrc.org
ami.patel@hrc.org

*Counsel for Plaintiffs and the Proposed Class*